## HERNDON et al. v. WILLIAMS. (No. 9654.)

(Court of Civil Appeals of Texas. Fort Worth. May 21, 1921. Rehearing Denied July 2, 1921.)

1. **Appeal and error &lrhar;931(1)—Court of Civil Appeals must accept testimony which supports judgment.**

Where the testimony is conflicting, the Court of Civil Appeals in deference to the trial court's finding must accept as true the testimony which supports the judgment.

2. **Brokers &lrhar;56(1)—Commissions not earned by broker abandoning efforts before owner sells.**

Where, before sale of the property was consummated by the owner, the broker, previously authorized by him to sell, had abandoned all efforts to make a sale at the price the owner

asked, such broker is not entitled to commission on the sale.

## On Motion for Rehearing.

**3. Brokers 82(4) — Testimony admissible under general denial.**

In a broker's action to recover commission on sale of realty by defendant owner, testimony of a detective employed by defendant owner that plaintiff broker told him that a prospective buyer had refused to pay more than a certain price for the property, and that the broker then gave it up as a hopeless job, *held* admissible under the general denial.

Appeal from Tarrant County Court; W. P. Walker, Judge.

Suit by J. H. Herndon and another against H. A. Williams. From a judgment for defendant in a justice court plaintiffs appealed, and from a judgment for defendant in the county court they again appeal. Affirmed.

R. H. Smith and W. D. Avra, both of Fort Worth, for appellants.

Wm. R. Booth, of Fort Worth, for appellee.

BUCK, J. J. H. Herndon and R. J. Caperton, real estate brokers, sued H. A. Williams in the justice court for 5 per cent. commission on the sale of a piece of property sold for $4,000. From an adverse judgment in the justice court, plaintiffs appealed to the county court, where a jury was waived, and the defendant again prevailed, and the plaintiffs have appealed.

The evidence shows that the defendant in August, 1919, owned a number of pieces of property in Fort Worth; that Lon Jewell & Co. and W. C. Kitchen had these properties listed for sale, and that plaintiff J. H. Herndon also had listed with him some 17 pieces of property belonging to defendant; that Herndon took a prospective purchaser to see certain of the houses belonging to Mr. Williams; that when he went to the house occupied by Mr. Ludke Mrs. Ludke told him that they had been thinking of buying the property, but that Miss Joe Jewell had offered them the property for $3,500. The defendant had listed this house with the plaintiffs at $4,000. Mr. Herndon did not show the customer this house at that time, but later returned and saw Mr. Ludke and made a contract with him to sell him the place at $3,500, Mr. Ludke putting up a cash payment of $25, with the understanding, as Herndon testified, that they would wait until Mr. Williams, who was out of the city, returned to see if he would take $3,500 for the property. On his return Mr. Herndon called him up, and they went together to see Mr. Ludke. Mr. Williams refused to take less than $4,000, and the question of sale remained in this condition for several days.

In about a week Herndon called upon Williams for final settlement for other property he had sold for Williams, and the latter asked him what he had done about the Ludke deal. Herndon remarked, "That is all off." Two or three days later Mr. Williams called at Mr. Ludke's store to purchase some groceries, and the latter asked him about the $25 deposited. Williams promised to see that he got it back. On a later occasion, when Herndon called at Williams' home, Williams deducted from the commission due Herndon on another sale the $25 deposited by Ludke, and still held by Herndon. About two weeks later, after Williams had retired, Ludke called up Williams over the telephone and wanted to know what he was going to do about the deal. Williams replied that he did not know of any deal that they had, and Ludke said that he had a contract with Mr. Herndon to purchase the property at $3,500; that he had consulted with his lawyer who had advised him that he could hold defendant to the contract. Later in the night Ludke called up Williams again over the telephone and told him that he had talked with friends who said that the place was worth $4,000 and that he would take it at that price. Whereupon the contract of sale was made.

[1] R. W. Watson testified that he was a private detective and had been employed by the defendant subsequent to the filing of the suit in the justice court to have a conversation with Herndon, and that the latter told him that Ludke had refused to pay more than $3,000 for the property, and that Herndon then gave the proposition up as a hopeless job. The plaintiff denied these statements testified to by Watson, but inasmuch as the testimony is in conflict as to whether Herndon stated that upon Williams' refusal to take $3,500 for the property, and Ludke's refusal to pay more than that for it, he gave up the effort to sell we must, in deference to the trial court's evident finding accept as true the testimony which supports the judgment.

In Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, our Supreme Court speaking through Chief Justice Phillips, says:

"A different state of case is presented and therefore a different rule prevails where the broker's effort with a particular buyer has, after fair opportunity and without any fault of the owner, come to naught, resulting in the failure and termination of his negotiation; and later the owner by direct and independent negotiation effects a sale to the same buyer, though upon the same terms originally authorized to the broker. Under such circumstances the broker cannot be. justly considered the procuring cause of the owner's sale, and the latter incurs no liability to him on that account."

See, also, Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959; Hancock v. Stacy, 103 Tex. 219, 125

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

233 S.W.—35

S. W. 884; Aukerman v. Bremer, 209 S. W. 261.

[2] It was further in evidence that Lon Jewell & Co. and W. C. Kitchen had talked to Ludke, who was a tenant of Williams, about selling the property to him, but we think the judgment of the trial court should be sustained on the evidence noted, to the effect that before the sale was consummated between Williams and Ludke that Herndon had abandoned the effort to sell the property at the price Williams asked for it. Therefore all assignments are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

[3] Appellants earnestly insist that the evidence requires a reversal of the judgment and a rendering in favor of them. We have again considered the issues presented in the briefs, the statement of facts and transcript, and find that the evidence is sufficient to sustain the judgment below on the ground that Herndon abandoned the effort to sell the property for $4,000, and so stated to Williams before the latter sold it to Ludke. We do not think such defense required a special pleading to make admissible the testimony referred to in our original opinion, and that said testimony was admissible under the general denial.

The motion for rehearing is overruled.